STATE OF NEW YORK
SUPREME COURT                                    COUNTY OF ALBANY

BESTPASS, INC.,

                          Plaintiff,

   -against-

                                                     **VERIFIED COMPLAINT**
TRANSPORT SYSTEMS, LLC.,                                     Index No.

                          Defendant.

      Plaintiff, BESTPASS. INC., (hereinafter "BestPass" or "Plaintiff"), by its attorney M. Angelo Genova III, Esq., as and for its Verified Complaint, respectfully alleges as follows against TRANSPORT SYSTEMS, LLC., (hereinafter "Defendant"):

      1.     At all times hereinafter mentioned, Plaintiff is and was a corporation formed under the laws of the State of New York, having a principal place of business at 500 New Karner Road, Albany, NY 12205.

      2.     Plaintiff provides nationwide toll management services to commercial transportation companies throughout the United States and Canada.

      3.     Upon information and belief, Defendant is a Michigan limited liability company with a business address of 12825 Ford Road, Dearborn, MI 48126.

      4.     Upon information and belief, Defendant was and still maintains its primary place of business in Wayne County, State of Michigan.

      5.     Upon information and belief, at all relevant times Defendant operated a commercial transportation business providing nationwide delivery and logistic services.

      6.     Upon information and belief, Khater Saleh (hereinafter "Saleh") is a member of Defendant and serves as the CFO/Operational Manager of Defendant.

1

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to Article VI, Section 7 of the New York Constitution and the Civil Practice Law and Rules, in that this is an action for money damages arising out of a commercial contract for services.

8. The Court has personal jurisdiction over Defendant under CPLR §§ 301 and 302(a)(1) because Defendant purposefully transacted business within the State of New York and the causes of action asserted herein arise from those purposeful activities. Defendant entered into a continuing contractual relationship with BestPass, Inc., a corporation headquartered and domiciled in Albany County, New York, for the provision of toll-payment processing, transponder management, and account-administration services. The Agreement was accepted and executed by BestPass in Albany, New York, where BestPass maintains its billing, accounting, and account-reconciliation operations. All invoices, statements of account, and payment demands were generated, issued, and administered from BestPass's Albany headquarters, and Defendant was required to remit payment to BestPass pursuant to that Albany-based account. In performing under the Agreement, Defendant regularly communicated with BestPass personnel located in Albany regarding account funding, transponder activity, and payment schedules. By establishing and maintaining this continuous contractual relationship with a New York-based corporation and deriving substantial benefits from that relationship, Defendant availed itself of the privilege of conducting business within this State, and the claims asserted herein arise directly from that conduct.

9. Venue is proper in this Court under CPLR 503(a) because Plaintiff maintains its principal place of business in Albany County and a substantial part of the events giving rise to this action occurred there, including contract performance and receipt of payment.

2

10. Pursuant to CPLR § 313, service of process may be made upon Defendant outside the State of New York because this Court has personal jurisdiction over them by reason of their transaction of business within the State and their contractual dealings with a New York-based corporation.

**FACTS**

11. On or about October 14, 2022, Plaintiff and Defendant entered into a binding written agreement (the "Agreement"), pursuant to which Plaintiff agreed to provide toll management services to Defendant. A copy of the Agreement is annexed as *Exhibit A*.

12. In accordance with the Agreement, Plaintiff provided Defendant with toll payment processing, transponder issuance, usage tracking, and administrative support for its commercial fleet (collectively, the "Services").

13. Pursuant to the Agreement, Defendant was required to prepay anticipated toll charges and timely pay invoices for past charges. However, when Defendant failed to prepay for anticipated toll usage and/or failed to pay invoiced past charges, Plaintiff, whose transponders were registered for tolling in its own name, was automatically charged for Defendant's toll transactions. As a result, Plaintiff incurred substantial unpaid toll charges on Defendant's behalf.

14. The Services were rendered satisfactorily by Plaintiff to Defendant from on or around October 14, 2022, until December 10, 2025 (hereinafter the "Service Period"), during which time Defendant regularly incurred toll charges and service fees in accordance with the Agreement.

15. Throughout the Service Period, Plaintiff issued invoices, replenishment

3

requests, and written demands for payment. A true and accurate copy of representative statements are annexed hereto as *Exhibit B* (hereinafter the "Statements").

16. Said Services and Statements were accepted without objection by the Defendant.

17. Defendant paid several Statements as issued by Plaintiff, however by January 2023, Defendant ceased making full payments without explanation.

18. While Defendant temporarily brought its account current by February 2023, it again failed to make full payments in March and April 2023, again without articulating any legitimate basis for withholding timely payment.

19. Defendant once again brought its account current in May 2023, but beginning in June 2023, Defendant ceased making full payments altogether.

20. Despite repeated written and electronic demands for payment, Defendant failed to pay the full amount due for Services rendered.

21. Throughout 2024, Plaintiff made multiple attempts to work with Defendant to establish a formalized repayment plan to bring the account current.

22. As a result of Plaintiff's efforts, Defendant acknowledged its debt obligation and made additional payments toward the past-due balance for a period of time. However, Defendant failed to stay current with its promised payments, and the debt continued to increase. A copy of relevant email correspondence between the parties is annexed hereto as *Exhibit C*.

23. As a consequence of Defendant's insufficient payments, and pursuant to the terms of the Agreement, Plaintiff rescinded certain credits and discounts that had been issued to Defendant contingent upon timely payment. These adjustments were reflected

in subsequent invoices.

24. Due to Defendant's continuing breach of the Agreement and failure to maintain a positive account balance, Plaintiff terminated Defendant's account on December 10, 2024, as confirmed by BestPass's internal records and correspondence between the parties.

25. Defendant made no contemporaneous, specific objection to the September–December 2024 monthly statements or to the replenishment notices before termination.

26. On January 17, 2025, Plaintiff, through counsel, dispatched a formal Attorney Demand Letter to Defendant, seeking recovery for breach of contract for unpaid services rendered during the Service Period in the amount of $101,553.95. This balance consisted of a then unpaid principal in the amount of $92,163.95 and an early termination fee of $9,390.00, as set forth in the Agreement.  A copy of the Attorney Demand Letter is annexed hereto as *Exhibit D*.

27. After the account was deactivated and following Plaintiff's January 17, 2025 demand, Defendant, through counsel, raised generalized accounting complaints in late January 2025, including assertions of a supposed $100,000 "reduction" discrepancy and alleged misapplication of a $30,000 payment. Defendant did not identify a single erroneous line item, produce any ledger or supporting documentation, or present a counter-reconciliation. Plaintiff promptly and fully responded to each inquiry in detailed correspondence dated January 21 and January 30, 2025, providing account statements, payment ledgers, and written explanations that reconciled every figure and confirmed the accuracy of the balance due. Defendant offered no further response and raised no

5

additional objections thereafter.

28. After the account was terminated, Plaintiff continued to receive credit memos from tolling authorities and processed all eligible transponder-return and toll-refund credits. On July 7, 2025, Plaintiff issued its final reconciled statement of account, Invoice No. 25061034099, reflecting a beginning balance of $99,671.75, credits totaling $2,636.50, and a small administrative fee of $263.65, resulting in a final balance due of $97,298.90 as of June 30, 2025. This final statement incorporated every available offset and superseded all prior balances. A true and accurate copy of this final invoice is annexed as *Exhibit E*.

29. Defendant has made no payment toward the $97,298.90 owed and has not raised any timely specific written objection to the July 7, 2025 final reconciled invoice.

30. The Agreement provides that it shall be governed by the laws of the State of New York and that any dispute arising thereunder shall be brought in the Supreme Court of the State of New York, County of Albany.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

31. The Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs "1" through "30" above as if fully set forth herein.

32. Pursuant to the Agreement, Defendant was required to prepay for toll charges, make timely payments on invoiced past charges, and maintain sufficient funds in its account for continued use of Plaintiff's services. See *Exhibit A*.

33. Plaintiff did satisfactorily render the goods and services to Defendant throughout the term of the Service Period.

34. Defendant breached the Agreement by failing to replenish its account and by failing to pay invoices when due. Defendant's repeated failure to fund its account caused Plaintiff to advance toll payments and absorb charges that were contractually the responsibility of Defendant.

35. The principal value of the Services rendered during the Service Period by Plaintiff to Defendant which remains outstanding is $97,298.90 (hereinafter "Principal Balance").

36. On numerous occasions Plaintiff demanded payment from Defendant for the Principal Balance. See *Exhibits B-D*.

37. Defendant failed to remit payment in full, despite continued use of Plaintiff's services.

38. The Principal Balance became delinquent on December 10, 2024 (hereinafter the "Date of Default").

39. By reason of the foregoing, Defendant has breached the Agreement.

40. As a result of the Defendants' breach of contract, the Plaintiff has suffered damages in the amount of no less than $97,298.90, plus statutory prejudgment interest.

41. Therefore, Defendant is liable and indebted to Plaintiff for the value of the Principal Balance rendered, in an amount no less than the sum of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT AND 90/100 ($97,298.90) DOLLARS, plus statutory prejudgment interest from the Date of Default, together with all costs and disbursements in this action.

## SECOND CAUSE OF ACTION
### (Account Stated)

42. Plaintiff repeats, reiterates and realleges paragraphs numbered "1" through "41" of this Complaint with the same force and effect as if more fully set forth at length herein.

43. Defendant contracted with Plaintiff to perform the Services with the understanding that Plaintiff would invoice Defendant the amount owed as Services were rendered.

44. Plaintiff satisfactorily rendered Services throughout the Outstanding Services Period.

45. Plaintiff invoiced Defendants on a monthly basis for the amounts then due for the Services rendered. See *Exhibit B*.

46. All invoices and statements of account were sent electronically to the email address provided by Defendant.

47. Defendant received and retained each invoice without objection within a reasonable time.

48. The total amount invoiced Defendants for the Services rendered by Plaintiff, after application of all credits and offsets, is $97,298.90, which remains due and unpaid.

49. The invoices accurately reflect the agreed value of the Services rendered by Plaintiff and accepted by Defendant.

50. Plaintiff rendered the Services upon the terms and conditions set forth in the Agreement with the knowledge and consent of Defendant.

51. On numerous occasions, Plaintiff has demanded Defendant pay the amount

8

set forth in the Statements.

52. Despite demand, no timely objection or payment has been made by Defendant to Plaintiff as relates to the outstanding balance set forth within the invoices prior to termination.

53. Throughout 2024, Defendant and its representatives acknowledged the existence of the indebtedness and represented that payments were being made, without ever contesting the amounts billed. See *Exhibit C.*

54. Therefore, Defendant is liable and indebted to Plaintiff for the value of the Principal Balance rendered, in an amount no less than the sum of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT AND 90/100 ($97,298.90) DOLLARS, plus statutory prejudgment interest from the Date of Default, together with all costs and disbursements in this action.

### THIRD CAUSE OF ACTION
**(Quantum Meruit-Pled in the Alternative)**

55. Plaintiff repeats, reiterates and realleges paragraphs numbered "1" through "54" of this Complaint with the same force and effect as if more fully set forth at length herein.

56. During the Service Period, Plaintiff provided valuable toll-management services to Defendant in good faith and with the reasonable expectation of compensation.

57. Of the total outstanding balance owed by Defendant, approximately ninety percent (90%) represents toll charges that Plaintiff advanced and paid directly to tolling authorities on Defendant's behalf, thereby conferring a substantial pecuniary benefit upon Defendant.

9

58. Defendant knowingly accepted and retained the benefits of Plaintiff's advances and services, including the toll payments made on its behalf, while continuing to utilize Plaintiff's toll-management platform and related support.

59. Plaintiff regularly invoiced Defendant for the reasonable value of the services rendered and the toll charges advanced, which together total $97,298.90. See *Exhibit B.*

60. Despite due demand, Defendant has failed and refused to reimburse Plaintiff for the value of the services rendered and the toll payments advanced on Defendant's behalf.

61. As a result, Plaintiff has suffered damages in the amount of $97,298.90, representing the unpaid reasonable value of the services and toll advancements conferred upon Defendant.

62. Therefore, Defendant is liable and indebted to Plaintiff for the value of the Principal Balance rendered, in an amount no less than the sum of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT AND 90/100 ($97,298.90) DOLLARS, plus statutory prejudgment interest from the Date of Default, together with all costs and disbursements in this action.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment- Pled in the Alternative)

63. The Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs "1" through "62" above as if fully set forth herein.

64. During the Service Period, Plaintiff provided toll-management services and related support for the benefit of Defendant and advanced substantial sums to tolling authorities on Defendant's behalf.

65. Of the total outstanding balance owed by Defendant, approximately ninety percent (90%) represents toll charges that Plaintiff paid directly to tolling authorities for Defendant's account.

66. Defendant knowingly accepted and retained the benefit of these payments and services, including the clearance of toll obligations for its fleet, without reimbursing Plaintiff for the value thereof.

67. The reasonable value of the benefits conferred upon Defendant that remain unpaid is $97,298.90.

68. Defendant's retention of these benefits without payment is unjust and inequitable, and equity and good conscience require that Defendant compensate Plaintiff for the same.

69. For the foregoing reasons, Defendant was unjustly enriched, and that equity in good conscience requires Defendant to compensate Plaintiff in the sum of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT AND 90/100 ($97,298.90) DOLLARS, plus statutory prejudgment interest from the Date of Default, together with all costs and disbursements in this action.

### FIFTH CAUSE OF ACTION
**(Constructive Trust as Against Defendant)**

70. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "69" above as if fully set forth herein.

71. Upon information and belief, Defendant collected funds from its shipping and logistics customers identified as "toll," "road usage," or similar charges corresponding to the electronic tolls advanced by Plaintiff pursuant to the Agreement and the Services rendered during the Service Period.

11

72. Upon information and belief, those toll-related proceeds were collected by Defendant for the express purpose of satisfying the toll obligations incurred through the BestPass account.

73. Upon information and belief, Defendant has retained those toll-related proceeds and failed to remit them to Plaintiff, despite repeated written and electronic demands for payment. See *Exhibits B and C*.

74. Upon information and belief, the toll-related proceeds constitute specifically identifiable funds held by Defendant that, in equity and good conscience, belong to Plaintiff because Plaintiff advanced the underlying toll payments on Defendant's behalf.

75. Upon information and belief, a confidential or fiduciary relationship existed between the parties arising from Defendant's entrustment of toll-collection and remittance responsibilities to Plaintiff and the reliance placed by Plaintiff on Defendant's representations and course of conduct indicating that toll reimbursements collected from its customers would be used to satisfy its BestPass obligations.

76. Upon information and belief, Defendant's retention of those toll-related proceeds is wrongful, inequitable, and contrary to good conscience, and Defendant would be unjustly enriched if permitted to retain them.

77. Upon information and belief, equity requires the imposition of a constructive trust over the toll-related proceeds collected and retained by Defendant and over any accounts, instruments, or assets into which such proceeds have been deposited or converted.

78. Upon information and belief, the amount of funds wrongfully retained by Defendant and subject to the constructive trust equals at least NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT AND 90/100 ($97,298.90) DOLLARS,

exclusive of statutory prejudgment interest, costs, and disbursements.

79. Therefore, Plaintiff seeks the imposition of a constructive trust in favor of BestPass over all toll-related proceeds and identifiable funds collected by Defendant from its shipping and logistics customers that were intended to satisfy toll obligations advanced by Plaintiff, together with statutory prejudgment interest from December 10, 2024, and all costs and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant(s) as follows:

I. That on the First Cause of Action (Breach of Contract), Plaintiff have a money judgment against Defendant Transport Systems, LLC in the principal amount of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT and 90/100 ($97,298.90) DOLLARS, together with statutory prejudgment interest from December 10, 2024, and all costs and disbursements of this action; and

II. That on the Second Cause of Action (Account Stated), Plaintiff have a money judgment against Defendant Transport Systems, LLC in the principal amount of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT and 90/100 ($97,298.90) DOLLARS, together with statutory prejudgment interest at nine percent (9%) per annum from December 10, 2024, and all costs and disbursements of this action; and

III. That on the Third Cause of Action (Quantum Meruit – Pled in the Alternative), Plaintiff have a money judgment against Defendant Transport Systems, LLC in the amount of NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT and 90/100 ($97,298.90) DOLLARS, together with statutory

13

prejudgment interest from December 10, 2024, and all costs and disbursements of this action; and

IV. That on the Fourth Cause of Action (Unjust Enrichment – Pled in the Alternative), Plaintiff have a money judgment against Defendant Transport Systems, LLC in an amount to be determined at trial but not less than NINETY-SEVEN THOUSAND TWO HUNDRED NINETY-EIGHT and 90/100 ($97,298.90) DOLLARS, together with statutory prejudgment interest from December 10, 2024, and all costs and disbursements of this action; and

V. That on the Fifth Cause of Action (Constructive Trust – Pled in the Alternative), the Court impose a constructive trust in favor of Plaintiff over all toll-related proceeds and identifiable funds collected by Defendant from its shipping and logistics customers that were intended to satisfy toll obligations advanced by Plaintiff, together with statutory prejudgment interest from December 10, 2024, and all costs and disbursements of this action; and

VI. That Plaintiff receive all of the aforesaid and such other and further relief as this Court may deem just and proper.

Dated: October 21, 2025

_____
M. ANGELO GENOVA III, Esq.
*Attorney for Plaintiff*
485 Madison Avenue, 16th Floor
New York, New York 10022
P: (212) 755-4547
F: (212) 755-4549